# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| THERESA BLACK, et al., ) <br> ) <br>     Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> BAYER CORP., BAYER HEALTHCARE ) <br> LLC, BAYER ESSURE, INC. ) <br> (f/k/a Conceptus, Inc.), BAYER ) <br> HEALTHCARE PHARMACEUTICALS, ) <br> INC., BAYER A.G., ) <br> ) <br>     Defendants. ) | Case No. 4:17-cv-01333-JCH |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiffs' Motion to Remand, filed on April 20, 2017. (ECF No. 15.) The Motion is fully briefed and ready for disposition.

## BACKGROUND

On February 28, 2017, Plaintiffs filed their Petition for Damages in the Circuit Court of the City of St. Louis, Missouri. (Petition, ECF No. 1.1). In total, there are 95 Plaintiffs joined to this action.[1] Each Plaintiff claims that she was prescribed and implanted with the Essure system of permanent birth control, which is manufactured and distributed by Defendants, and that as a result she "suffered and will continue to suffer from severe injuries and damages, including but not limited to irregular heavy menstrual cycle bleeding, organ perforation, and severe chronic pain which required surgical intervention to remove the Essure coils or will require surgical intervention to remove the Essure coils in the future." (Petition, ¶¶ 445, 446, 461, 467-1002.)

---

[1] Plaintiffs are residents of 25 states, including, Alabama, Arizona, Arkansas, California, Colorado, Florida, Georgia, Illinois, Indiana, Kentucky, Louisiana, Mississippi, Missouri, Nevada, New Jersey, New Mexico, New York, Ohio, Oregon, Pennsylvania, South Carolina, Tennessee, Texas, Virginia, and Wisconsin. (Petition, ¶¶ 61-156.)

Plaintiffs allege that their claims arise from "[Defendants'] failure to warn of the risks, dangers, and adverse events associated with Essure as manufactured, promoted, sold and supplied by [Defendants], and as a result of the negligence, callousness, and other wrongdoing and misconduct of [Defendants] as described herein…" (*Id.*, ¶ 462.) Based upon these allegations, Plaintiffs assert the following causes of action: negligence, negligence per se, negligence-misrepresentation, strict liability-failure to warn, manufacturing defect, common law fraud, constructive fraud, fraudulent concealment, breach of express warranty, breach of implied warranty, violation of consumer protection laws, Missouri Products liability, violation of the Missouri Merchandising Practices Act, and gross negligence/punitive damages. (*Id.*, ¶¶ 1015-1237.)

Defendants removed the action to this Court on April 14, 2017, asserting diversity jurisdiction under 28 U.S.C. § 1332(a), federal question jurisdiction under 28 U.S.C. § 1331, and diversity jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d) ("CAFA"). (Notice of Removal, ECF No. 1.) Despite the lack of complete diversity on the face of the Complaint, Defendants contend that there is complete diversity if the Court ignores the citizenship of the non-diverse Plaintiffs who, according to Defendants, were fraudulently misjoined. Defendants also argue that the Court should dismiss the claims of the non-Missouri Plaintiffs for lack of personal jurisdiction or, alternatively, under the doctrine of *forum non conveniens*. *See Id.* Defendants have also filed a Motion to Dismiss and a Motion to Sever. (ECF Nos. 4, 7.)

As mentioned above, Plaintiffs now move for remand, arguing that the Court should address subject matter jurisdiction before personal jurisdiction. Plaintiffs further argue that there is no diversity jurisdiction because their joinder in one action is proper, that no federal question

arises from their Complaint, and that CAFA does not confer diversity jurisdiction because there are less than 100 plaintiffs and there has been no motion to consolidate multiple complaints. (ECF Nos. 15, 16.) Plaintiffs have also filed a Motion to Stay, requesting that the Court stay the proceedings on all other issues or motions except for Plaintiff's Motion to Remand. (ECF No. 17.)

## DISCUSSION

A civil action brought in state court may be removed to the proper district court if the district court has original jurisdiction over the action. *See* 28 U.S.C. § 1441; *In re Prempro Prods. Liab. Litig.*, 591 F.3d 613, 619 (8th Cir. 2010). Removal statutes are strictly construed, however, and any doubts about the propriety of removal are resolved in favor of state court jurisdiction and remand. *See Wilkinson v. Shackelford*, 478 F.3d 957, 963 (8th Cir. 2007). The party invoking federal jurisdiction and seeking removal bears the burden of establishing federal jurisdiction by a preponderance of the evidence. *See Central Iowa Power Co-op v. Midwest Indep. Transmission Sys. Operator, Inc.*, 561 F.3d 904, 912 (8th Cir. 2009). A case must be remanded if, at any time, it appears that the district court lacks subject matter jurisdiction. *See* 28 U.S.C. § 1447(c); Fed. R. Civ. P. 12(h)(3).

Defendants urge this Court to consider the issue of personal jurisdiction before addressing subject matter jurisdiction. The Supreme Court has held that courts have discretion to consider the issue of personal jurisdiction before considering whether they have subject matter jurisdiction, "where personal jurisdiction is straightforward and presents no complex question of state law, and the alleged defect in subject matter jurisdiction raises a difficult question." *Dorman v. Bayer Corp*, 2016 WL 7033765, at *1 (E.D. Mo. Dec. 2, 2016 (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 588 (1999)). "However, 'in most instances subject-matter

jurisdiction will involve no arduous inquiry…[and] both expedition and sensitivity to state courts' coequal stature should impel the federal court to dispose of that issue first.'" *Id.* (quoting *Ruhrgas*, 526 U.S. at 587-88)).

In similar Essure device cases, judges in this district have consistently resolved the subject matter jurisdiction issue first, upon concluding that the personal jurisdiction issue required a more fact-intensive inquiry than the straightforward issue of subject matter jurisdiction. *See Jordan v. Bayer Corp.*, No. 4:17-CV-1330-JAR, 2017 WL 1909059, at *2-3 (E.D. Mo. May 10, 2017) (collecting cases). Upon consideration, this Court will do the same here, as the inquiry regarding subject matter jurisdiction is straightforward. *See Dorman*, 2016 WL 7033765, at *1. For similar reasons, to the extent Defendants urge the Court to consider the *forum non conveniens* issue prior to the subject matter jurisdiction issue, the Court declines to do so. *See Jordan*, 2017 WL 1909059, at *2; *Dotson v. Bayer Corp.*, No. 4:16-cv-01593PLC, 2017 WL 35706, at *3 (E.D. Mo. Jan. 4, 2017).

In view of the foregoing, the Court will consider each of the bases for federal subject matter jurisdiction asserted by Defendants.

**A. Diversity Jurisdiction**

Federal district courts have original jurisdiction in all civil actions between citizens of different states if the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332(a). "Complete diversity of citizenship exists where no defendant holds citizenship in the same state where any plaintiff holds citizenship." *OnePoint Solutions, LLC v. Borchert*, 486 F.3d 342, 346 (8th Cir. 2007). Here, there is no dispute that the amount in controversy is over $75,000. Likewise, the Parties' agree that Plaintiffs' complaint does not allege complete diversity between

the Parties. Nevertheless, Defendants argue that this Court has diversity jurisdiction because the non-Missouri Plaintiffs' claims were fraudulently misjoined.

"Courts have long recognized fraudulent joinder as an exception to the complete diversity rule." *In re Prempro*, 591 F.3d at 620 (citation omitted). "Fraudulent joinder occurs when a plaintiff files a frivolous or illegitimate claim against a non-diverse defendant solely to prevent removal." *Id.* (citation omitted). Fraudulent misjoinder is a more recent exception to the complete diversity rule. *See Id*. "Fraudulent misjoinder occurs when a plaintiff sues a diverse defendant in state court and joins a viable claim involving the nondiverse party, or a resident defendant, even though the plaintiff has no reasonable procedural basis to join them in one action because the claims bear no relation to each other." *Id.* (quotation and citation omitted).

The Eighth Circuit in *Prempro* acknowledged the doctrine of fraudulent misjoinder, but declined to either adopt or reject it. *Id.* at 622. Instead, the Court concluded that even if it were to adopt the doctrine, the facts of the case before it were not so egregious as to warrant its application. *See Id.* The Court reasoned that the Eighth Circuit uses a very broad definition for the term "transaction," as that term applies in the context of permissive joinder under Federal Rule of Civil Procedure 20, and that the term may be understood to "comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." *Id.* (quotation and citations omitted). The Court found that the plaintiffs' claims all arose from a series of transactions between hormone replacement therapy ("HRT") pharmaceutical manufacturers and individuals that used the drugs. *Id.* at 623. This finding was bolstered by the fact that the plaintiffs alleged (1) "the manufacturers conducted a national sales and marketing campaign to falsely promote the safety and benefits of HRT drugs and understated the risks of HRT drugs"; and (2) "[the plaintiffs] each developed breast cancer

5

as a result of the manufacturers' negligence in designing, manufacturing, testing, advertising, warning, marketing, and selling HRT drugs." *Id.* The court also found that there were likely common questions of law and fact between the claims, such as the causal link between HRT drugs and breast cancer. *Id.* Based upon these findings, the Court in *Prempro* was unable to conclude that the plaintiffs' claims had "no real connection to each other such that they [were] egregiously misjoined." *Id.* (citation omitted).

Courts in this district have relied on *Prempro* and concluded that the joinder of numerous plaintiffs alleging injury from the Essure device was not "egregious misjoinder." *See, e.g.*, *Jordan*, 2017 WL 1909059, at *4 (collecting cases). The Court finds application of the fraudulent misjoinder doctrine to be inappropriate here as well. Plaintiffs' claims are focused on the same product, arise out of the same development, distribution, marketing, and sales practices for that product, and have common issues of law and fact that are likely to arise in the litigation. While there are certainly differences between Plaintiffs' claims (i.e., Plaintiffs had the device implanted by different physicians and at different times, and they allege different injuries), those differences do not render joinder here "egregious." *See id.*

In addition, to the extent Defendants contend that fraudulent joinder exists because the non-Missouri Plaintiffs cannot subject them to general or specific personal jurisdiction in Missouri, the Court notes that courts in this district have repeatedly held that an alleged lack of personal jurisdiction does not establish fraudulent joinder. *See, e.g.*, *Jordan*, 2017 WL 1909059, at *4; *Dorman*, 2016 WL 7033765, at *1. The Court follows the approach taken by these courts and finds that Defendants have failed to establish fraudulent joinder in this case. Because there is no complete diversity, the Court finds that diversity jurisdiction does not exist.

## B. Federal Question Jurisdiction

Defendants also invoke federal question jurisdiction, asserting that Plaintiffs' claims depend upon the resolution of a substantial, disputed federal question, and that the exercise of jurisdiction will not disrupt the balance between federal and state jurisdiction adopted by Congress. Defendants argue that the Court has federal question jurisdiction because Plaintiffs' state law claims turn on whether Defendants violated federal regulatory requirements, and because the federal law questions do not arise only in the context of a preemption defense.

Federal district courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. A claim "arises under" federal law if a federal question is presented on the face of the well-pleaded complaint. *See Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987); *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808 (1986). In other Essure cases, judges in this district have consistently rejected Defendants federal question jurisdiction argument. *See, e.g.*, *Jordan*, 2017 WL 1909059, at *4; *Dorman*, 2016 WL 7033765, at *3-4; *Johnson v. Bayer Corp.*, No. 4:16-CV-729 (CEJ), 2016 WL 3015187, at *2-3 (E.D. Mo. May 26, 2016) (collecting cases). For the reasons set forth in those decisions, this Court finds that the federal issues raised in Plaintiffs' Complaint, which are based on state law, are not substantial and are not capable of resolution without disrupting the federal-state balance contemplated by Congress. Therefore, the Court declines to exercise federal question jurisdiction.

## C. Jurisdiction under CAFA

Under CAFA, a "mass action" is defined as "any civil action…in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact…" 28 U.S.C. § 1332(d)(11)(B). Although this

7

case involves only 95 plaintiffs, Defendants argue that this case should be considered along with other similar Essure cases filed in this district to form a single mass action involving more than 100 plaintiffs. Defendants assert that these cases are part of the same mass action because the complaints contain the same substantive allegations, allege the same causes of action, were filed by the same counsel, and were filed in the same jurisdiction. Defendants contend that Plaintiffs cannot avoid removal under CAFA by artificially separating individuals into groups of fewer than 100 plaintiffs.

However, under CAFA, 100 or more plaintiffs must either (1) be joined in a single complaint, or (2) move to consolidate multiple complaints containing at least 100 plaintiffs, and propose that they be tried jointly. *See Scimone v. Carnival Corp.*, 720 F.3d 876, 881-82 (11th Cir. 2013). As noted above, the instant case does not involve the claims of 100 or more persons, and there is no indication in the record that this case will be consolidated or that Plaintiffs wish to have this case tried jointly with any other case. In addition, case law makes clear that separate multi-plaintiff cases may not be aggregated to satisfy the 100 plaintiff requirement of CAFA's mass action provision. *See, e.g.*, *Anderson v. Bayer Corp.*, 610 F.3d 390, 393-94 (7th Cir. 2010) ("The mass action provision gives plaintiffs the choice to file separate actions that do not qualify for CAFA jurisdiction."). Furthermore, Defendants' argument has been repeatedly rejected by courts in this district. *See, e.g.*, *Jordan*, 2017 WL 1909059, at *5 (collecting cases). The Court therefore concludes that it lacks jurisdiction under CAFA.

## **CONCLUSION**

For the reasons set forth above, the Court concludes that it lacks subject matter jurisdiction over this case. The Court will therefore grant Plaintiffs' Motion to Remand. Any

remaining questions regarding personal jurisdiction or improper joinder may be addressed by the state court.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion to Remand (ECF No. 15) is **GRANTED**, and that this matter is **REMANDED** to the Circuit Court of the City of St. Louis, State of Missouri. A separate Order of Remand will accompany this Memorandum and Order.

**IT IS FURTHER ORDERED** that all other pending motions are **DENIED** without prejudice as moot.

Dated this 15th day of June, 2017.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE